DANIEL A. VAN HORNE

*v.·*

THE NEWARK PASSENGER RAILWAY COMPANY.

1. A horse railway constructed in a public highway by authority of law does not impose a servitude upon the land in the highway additional to that for which it was originally taken.

2. When such a railway is constructed in a public highway without authority of law it is a public nuisance, because it is an invasion of the public easement.

3. In the latter case there is no invasion of the property rights of the owner of the fee of the land in the highway, and a court of equity will not interfere by injunction, at his instance, unless he suffers some special and serious injury from the existence of the railway there, distinct from that which is suffered by the public at large.

On order to show cause why injunction shall not issue.

*Mr. Hamilton Wallis,·* for the complainant.

*Mr. Anthony Q. Keasbey,* for the defendant,

THE CHANCELLOR.

The complainant, who is the owner of a lot of land abutting on Main' street, in the city of Orange, seeks, by injunction, to restrain the defendant from extending its horse railway through Main street in front of his land.

He insists that he is the owner of the fee of the land in Main street, in front of and adjoining his lot, to the centre of the highway; that the defendant is without legislative authority to construct and operate the railway in that street, and that the construction and operation of such railway over his land in the street will be an invasion of his property rights which this court will stay by injunction.

The defendant does not deny the complainant's ownership of the fee of the land in question, but disputes the insistment that

it has not sufficient legislative authority to extend its railway as proposed, and denies that this court will interfere by injunction even if it should conclude that no authority to extend the railway exists.

The conclusion I have reached precludes the necessity of examining the question as to the defendant's authority to extend its road. I will assume, for my present purpose, that it does not possess such authority.

The complainant's right to the land in the street is best described in the language of Mr. Justice Depue, in his opinion in the case of the *Improvement Co.* v. *Hoboken, 7 Vr. 540,* in the court of errors and appeals, where he says: "With respect to lands over which streets have been laid, the ownership, for all substantial purposes, is in the public. Nothing remains in the original proprietor but the naked fee, which, on the assertion of the public right, is divested of all beneficial interest."

In *Halsey* v. *Rapid Transit Street Railway Co., 2 Dick. Ch. 380,* Vice-Chancellor Van Fleet said: "Lands taken for streets are taken for all time, and, if taken upon compensation, compensation is made to the owner once for all. His compensation is awarded upon the basis that he is to be deprived perpetually of his lands. The lands are acquired for the purpose of providing a means of free passage common to all the people, and consequently may be rightfully used in any way that will subserve that purpose. By the taking the public acquire a right of free passage over every part of the land, not only by the means in use when the lands were taken, but by such other means as the improvements of age and new wants arising out of an increase in population or an enlargement of business may render necessary."

It is subject to the servitude thus described that the complainant owns the land now about to be invaded.

In *The Morris and Essex R. R. Co.* v. *Newark, 2 Stock. 358,* Chancellor Williamson, speaking of the burden of a railroad in a highway, says: "The *easement* of the highway is in the public, although the *fee* is technically in the adjacent owner. *It is the*

*easement only which is appropriated, and no right or title of the owner interfered with."*

Following this case is that of *Hinchman* v. *Paterson Horse R. Co., 2 C. E. Gr. 75,* in which Chancellor Green described the burden of horse railroads upon highways as follows: "They are ordinarily, as in this case, required to be laid level with the surface of the street, in conformity with existing grades. No excavations or embankments to affect the land are authorized or permitted. The use of the road is nearly identical with that of the ordinary highway. The motive power is the same. The noise and jarring of the street by the cars is not greater, and ordinarily less, than that produced by omnibuses and other vehicles in ordinary use. Admit that the nature of the use, as respects the traveling public, is somewhat variant, but how does it prejudice the land-holder? Is his property taken? Are his rights as land-holder affected? Does it interfere with the use of his property any more than an ordinary highway?"

It is now established beyond question in this state that a horse railway does not impose a servitude additional to the public easement upon the land in a highway. *Hinchman* v. *Paterson Horse R. R. Co., supra; Jersey City and Bergen R. R. Co.* v. *Hoboken R. R. Co., 5 C. E. Gr. 61; Paterson and Passaic Horse R. R. Co.* v. *Paterson, 9 C. E. Gr. 158; State* v. *Laverack, 5 Vr. 201; Stoudinger* v. *Newark, 1 Stew. Eq. 187; Halsey* v. *Rapid Transit R. R. Co., 2 Dick. Ch. Rep. 380.*

A notable authority here in point is the case of *The Citizens Coach Co.* v. *The Camden Horse R. R. Co., 6 Stew. Eq. 267,* where Mr. Justice Magie, in pronouncing the opinion of the court of errors and appeals, distinguishes the burden imposed by a horse railroad upon a highway from the burden imposed by a steam railway.

Now, if a horse railway is laid in a highway *without legislative authority* what is the situation?

The easement of the public, without the public's consent, is interfered with. Nothing is taken from the owner of the fee. The act is simply the creation of a public nuisance.

The remedy against such a nuisance is by indictment, or, in a proper case, by suit in equity instituted by the attorney-general. It is only where a private person suffers substantial injury from a public nuisance, differing from that suffered by the public at large, special to him and irreparable by suit for damages, that he may invoke the restraining power of this court.    *Van Wagenen* v. *Cooney, 18 Stew. Eq. 24*, and cases there cited.

The complainant in the case considered does not show that he will suffer special injury from the extension of the defendant's railway as proposed.    His position is not as strong as that of the complainant in *Zabriskie* v. *The Jersey City and Bergen R. R. Co., 2 Beas. 314.*    In that case Zabriskie was the owner of four vacant lots abutting on the southerly side of Grand street, in Jersey City.    The Jersey City and Bergen Railroad Company had authority to build its horse railway in the centre of that street, but, instead of so doing, constructed it upon the southerly side of the street so near the curb that it did not leave room for wagons to load and unload from the complainant's property, or for the complainant to place building materials when he should erect houses upon his property, as he presently proposed to do. An injunction was refused because the complainant did not show a present special injury.    The chancellor thought, however, that the objections urged would show special injury by the running of cars when the complainant should make use of his lots.    In *Hogencamp* v. *Paterson Horse R. R. Co., 2 C. E. Gr. 83*, a horse railway was constructed *by authority of law* in a street built over land of which the fee was in the complainant.    The complainant's property, abutting on the street, was occupied for business purposes, part as a manufactory and store and part as an express office.    He alleged that he would be specially injured in that the space between the track and the curb-stone would be so limited that it would not allow sufficient space for ordinary freight and express-wagons to stand lengthwise across the street when loading and unloading, as they had been accustomed to do.    Chancellor Green denied an injunction, remarking that the complainant's allegation of special injury, in the operation of the railway,

would be material and significant if the railway had been constructed without authority and had been a public nuisance.

It has been insisted for the complainant, and with much confidence, that the present case is within *Broome* v. *New York and New Jersey Telephone Co.*, *15 Stew. Eq. 143*, where telephone poles were set up without authority of law upon the complainant's land in a highway, and Chancellor Runyon issued a mandatory injunction for their removal because their erection was an unwarrantable invasion of the complainant's property rights. The distinction between the two cases lies in the fact that in the present case the horse railway does not, under the adjudications in this state, burden the land with an additional servitude, while in the case of Broome the telephone poles were held to add a servitude beyond that for which the land had been condemned. Chancellor Runyon said : " It is enough to say on that head, that it does not appear that the road board had any power to authorize any one to set up poles on the land of the highway and thus subject the land to an additional servitude besides that for which it was condemned."

The reason why the erection of telephone poles is regarded as imposing an additional servitude upon land in a highway is well stated by Vice-Chancellor Van Fleet in *Halsey* v. *The Rapid Transit Street Railway Co.*, *supra.*

The order to show cause must be discharged, with costs.